

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| VALERIE NAEGER, | ) | No. ED100012 |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | |
| FARMERS INSURANCE | ) | Honorable Robert H. Dierker |
| COMPANY, INC., | ) | |
| | ) | |
| Defendant/Respondent. | ) | Filed: May 6, 2014 |

## Introduction

Valerie Naeger (Naeger) appeals from the circuit court's entry of summary judgment in favor of Farmers Insurance Company, Inc. (Farmers) on Naeger's petition seeking damages for vexatious refusal to pay, underinsured motorist coverage, and breach of contract. We affirm.

## Factual and Procedural Background

On October 3, 2009, Naeger was a passenger in a vehicle owned by Mark Gessford (Gessford) when it was struck by an underinsured motor vehicle negligently operated by David Kupsky (Kupsky), resulting in serious bodily injury to Naeger.

On March 15, 2010, Naeger settled her claim against Kupsky with Progressive Casualty Insurance Company, his liability insurer, for $50,000. At the time of the accident, Gessford's vehicle was insured for underinsured motorist coverage (UIM) with

Allstate Insurance Company (Allstate). On November 24, 2010, Naeger settled her claim

for UIM coverage with Allstate for $190,000. Naeger has asserted aggregate damages of

$700,000.

Also at the time of the accident, Naeger was insured under a policy of automobile

insurance (Policy) issued by Farmers. The Policy included UIM coverage for bodily

injury with limits of $250,000 per person and $500,000 per occurrence. The Policy

insured a 2002 Honda Accord registered to Louis J. Naeger.

The Policy's UIM Endorsement provides in relevant part:

> We will pay all sums which an **insured person** is legally entitled to
> recover as **damages** from the owner or operator of an **UNDERinsured**
> **motor vehicle** because of **bodily injury** sustained by an **insured person**.
> The **bodily injury** must be caused by an **accident**, and arise out of the
> ownership, maintenance or use of the **UNDERinsured motor vehicle**.
>
> \*\*\*
> **Limits of Liability**
>
> a. Our liability under the UNDERinsured Motorist Coverage cannot
> exceed the limits of UNDERinsured Motorist Coverage stated in this
> policy, and the most we will pay will be the lesser of:
>     1. The difference between the amount of an **insured person's**
> **damages** for **bodily injury,** and the amount paid to that **insured person**
> by or for any person or organization who is or may be held legally liable
> for the **bodily injury;** or
>     2. The limits of liability of this coverage.
> b. Subject to subsections a. and c. – h. in this Limits of Liability section,
> we will pay up to the limits of liability shown in the schedule below as
> shown in the Declarations.
>
> \*\*\*
>
> f. The amount of UNDERinsured Motorist Coverage we will pay shall be
> reduced by any amount paid or payable to or for an **insured person;**
>     i. by or for any person or organization who is or may be held
> legally liable for the **bodily injury** to an **injured person;** or
>     ii. for bodily injury under the liability coverage of this policy.
>
> \*\*\*

**Additional Definitions Used for UNDERinsured Motorist
Coverage Only**

a. **Insured person** means:
    1. You or a **family member**
\*\*\*

c. **Underinsured Motor Vehicle** – means a land motor vehicle to which a
**bodily injury** liability bond or policy applies at the time of the **accident** but
its limits for **bodily injury** liability are less than the limits of liability for this
coverage.
\*\*\*

**Exclusions**

\*\*\*

This coverage does not apply to **bodily injury** sustained by a person:

\*\*\*

3. If the injured person was **occupying** a vehicle you do not own which is
insured for this coverage under another policy.

\*\*\*

**Other Insurance**

\*\*\*

2. We will not provide insurance for a vehicle other than **your insured car**
or **your insured motorcycle,** unless the owner of that vehicle has no other
insurance applicable hereunder.

On September 30, 2011, Naeger filed suit against Farmers for vexatious refusal to pay, underinsured motorist coverage, and breach of contract. In its answer, Farmers asserted numerous affirmative defenses including the Policy's UIM Exclusion 3 excluding coverage if the insured person was injured while occupying a non-owned automobile that is insured for UIM under another policy (the Non-Owned Vehicle Exclusion) and the Policy's UIM Other Insurance clause precluding UIM coverage for

3

vehicles not otherwise covered under the Policy so long as the vehicle has UIM coverage (Other Insurance Clause).

On October 31, 2012, Farmers filed a Motion for Summary Judgment along with a supporting memorandum and statement of undisputed material facts. Naeger filed her response to Farmers' Motion for Summary Judgment arguing the Policy was ambiguous. Farmers filed a timely response.

On April 17, 2013, the circuit court entered a Memorandum, Order and Judgment granting Farmers' Motion for Summary Judgment and dismissing with prejudice all of Naeger's claims against Farmers. After reviewing the Policy language, concluded the Non-Owned Vehicle Exclusion was unambiguous and Naeger was plainly excluded from coverage under the UIM endorsement. The court further found that the Other Insurance provision of the UIM endorsement, even if ambiguous in and of itself, does not serve to create an ambiguity as to the Non-Owned Vehicle Exclusion. This appeal follows.

Standard of Review

We review the circuit court's grant of summary judgment *de novo*. ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Whether to grant summary judgment is purely an issue of law. Ashford Condo., Inc. v. Horner & Shifrin, Inc., 328 S.W.3d 714, 717 (Mo. App. E.D. 2010). We will uphold summary judgment on appeal only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. ITT Comm. Fin. Corp., 854 S.W.2d at 376; Rule 74.04(c).[1] The record is viewed in the light most favorable to the party against whom judgment was entered. Citibrook II, L.L.C. v. Morgan's Foods of Missouri, Inc., 239 S.W.3d 631, 634 (Mo. App. E.D. 2007).

---

[1] All rule references are to Mo. R. Civ. P. 2010.

## Discussion

A defendant, as the movant, can establish a prima facie case for summary judgment by showing any of the following: (1) facts that negate any one of the elements of a claimant's cause of action; (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support movant's properly pleaded affirmative defense. Sloss v. Gerstner, 98 S.W.3d 893, 896 (Mo. App. W.D. 2003). We will affirm the trial court's judgment if it is sustainable on any theory. Citibrook, 239 S.W.3d at 634.

The interpretation of an insurance policy is a question of law. McCormack Baron Mgt. Services, Inc. v. Am. Guarantee & Liab. Ins. Co., 989 S.W.2d 168, 171 (Mo. banc 1999). The rules of contract construction apply to the construction of insurance policies. Capitol Indem. Corp. v. Callis, 963 S.W.2d 247, 249 (Mo. App. W.D. 1997). Unless the policy is ambiguous, it must be enforced as written. Id. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 132 (Mo. banc 2007). "In construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." Id. The words and phrases in a contract must be interpreted in the context of the policy as a whole and should not be considered in isolation. Long v. Shelter Ins. Companies, 351 S.W.3d 692, 696 (Mo. App. W.D. 2011).

5

Exclusionary clauses are strictly construed against the drafter, who also bears the burden of showing the exclusion applies. Burns v. Smith, 303 S.W.3d 505, 509-10 (Mo. banc 2010).

Naeger presents a single point on appeal, arguing the circuit court erred in granting summary judgment to Farmers because the Policy is confusing and ambiguous and therefore coverage must be interpreted in her favor. Naeger contends the Policy is ambiguous because the Policy's declaration page lists UIM coverage of $250,000 per person and $500,000 per occurrence but does not identify any exclusions or limitations for this coverage or put an insured on notice that the UIM coverage is subject to any limitations, conditions or exclusions; the limits of liability provisions are ambiguous both in and of themselves and when read in conjunction with the other terms of the Policy; the Non-Owned Vehicle Exclusion when read in isolation completely eliminates UIM coverage for Naeger; and the Other Insurance Clause is internally ambiguous and, under Farmers' interpretation and when read in isolation, also eliminates UIM coverage for Naeger.

### Alleged Ambiguity in the Other Insurance Clause

First, we address Naeger's contention that the Other Insurance Clause is ambiguous in and of itself.

The Other Insurance Clause provides as follows: "We will not provide insurance for a vehicle other than **your insured car** or **your insured motorcycle,** unless the owner of that vehicle has no other insurance applicable hereunder." Naeger contends the Other Insurance Clause is ambiguous because it fails to define certain terms and is inconsistent with the general language of the UIM Endorsement providing coverage. We disagree.

6

Naeger's assertion that the Policy's failure to define the phrases "that vehicle" and "no other insurance applicable hereunder" renders the clause and the Policy ambiguous is without merit. "The failure of a policy to define a term does not, in and of itself, render it ambiguous." Trainwreck West Inc. v. Burlington Ins. Co., 235 S.W.3d 33, 40 (Mo. App. E.D. 2007). In this case, the reasonable interpretation of the clause is that it refers to other UIM coverage, as the endorsement in which it is included pertains only to UIM coverage and its limitations and exclusions. See Kyte v. Am. Fam. Mut. Ins. Co., 92 S.W.3d 295, 300 (Mo. App. W.D. 2002) (holding phrase "other similar insurance" in an insurance policy's "Other Insurance" clause in a UIM endorsement refers to other UIM coverage when viewed in the context of the endorsement). When read in context, the Other Insurance Clause unambiguously precludes UIM coverage when the insured is injured while in a vehicle other than her insured vehicle and the owner of the vehicle has UIM coverage.

At the time of the accident, the insured, Naeger, was occupying a vehicle owned by Gessford and insured for UIM coverage under another policy with Allstate. These facts are undisputed and the Other Insurance Clause clearly and unambiguously excludes coverage under these facts.

### Declarations Page, Limits of Liability, and Ambiguity in the Policy as a Whole

Next, Naeger asserts that the declarations page and the limits of liability provisions create ambiguity in the contract. Naeger cites to Fanning v. Progressive N.W. Ins. Co., 412 S.W.3d 360, 365-66 (Mo. App. W.D. 2013) in support of her assertion that Farmers' failure to alert the insured of the existence of or to identify any limits or

7

exclusions to the Policy's UIM coverage on the declarations page creates an ambiguity in the contract.

In Fanning, the court held the insurance policy at issue was ambiguous because there was a conflict in the policy language. There, the policy stated the declarations page must include information on coverage and limits of liability, yet there was no limitation for UIM coverage set forth on the declarations page other than the policy maximums even though the contract contained limitations and exclusions in other provisions. Fanning, 412 S.W.3d at 365-66.

While Fanning supports the established practice of considering a policy's declarations page when analyzing an insurance contract, it does not stand for the proposition that a policy's declarations page must notify an insured of limitations or exclusions to UIM coverage absent such a requirement by the policy itself. Here, while no limitations or exclusions to the UIM coverage are apparent on the Policy's declarations page, nothing in the Policy indicates that such information would be contained there.

Naeger argues at length that the Limits of Liability provisions create ambiguity in the contract because (1) subsection (f) is ambiguous on its face for failing to set forth a specified amount of coverage Farmers will pay; (2) the policy fails to indicate how any one provision under the Limits of Liability section relates to the others, creating ambiguity as to the extent of Farmers' liability; and (3) while the extent of Farmers' liability is unclear, application of the Limits of Liability section results in Farmers paying some amount of UIM proceeds, which is in direct conflict with the Policy's Non-Owned Vehicle Exclusion and the Other Insurance Clause nullifying Farmers' liability for UIM

8

coverage. Naeger's analysis, however, is flawed, in that the mere existence of limitations and exclusions to broad coverage provisions does not, in and of itself, create ambiguity in the contract.

Naeger is correct that "[w]here an insurance policy promises the insured something at one point but then takes it away at another, there is an ambiguity." Chamness v. Am. Fam. Mut. Ins. Co., 226 S.W.3d 199, 204 (Mo. App. E.D. 2007). See also Todd v. Missouri United Sch. Ins. Council, 223 S.W.3d 156, 162 (Mo. banc 2007). However, as the Missouri Supreme Court explained:

> Taken out of context, [this language] may be confusing. Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude from coverage otherwise covered risks. While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent. The principle ... is more accurately stated as follows: "Though it is the duty of the court to reconcile conflicting clauses in a policy so far as their language reasonably permits, when reconciliation fails, inconsistent provisions will be construed most favorably to the insured."...Courts may not unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists....Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

Todd, 223 S.W.3d at 162-63 (internal citations omitted).

Here, the Limits of Liability provisions are not inconsistent with the Non-Owned Vehicle Exclusion and the Other Insurance Clause and are easily reconcilable. Reading the contract as a whole, the Non-Owned Vehicle Exclusion and the Other Insurance Clause exclude certain risks from coverage completely while the Limits of Liability provisions limit the extent of Farmers' liability when the risk is covered. Thus, the Limits of Liability provisions used to calculate the extent of Farmers' liability are only

9

relevant when the occurrence is covered by the Policy. If coverage for the accident is specifically excluded by the Non-Owned Vehicle Exclusion or the Other Insurance Clause, the Limits of Liability provisions are not invoked and any alleged inconsistencies are either non-existent or irrelevant.

## Public Policy Considerations

Naeger's final contention is that the Non-Owned Vehicle Exclusion and the Other Insurance Clause excluding coverage based upon the vehicle involved in the occurrence, rather than the UIM coverage following the insured, is contrary to the nature of UIM coverage.

"UIM coverage…refers to coverage intended to provide a source of recovery for insureds (up to the insurer's liability limit for such coverage) who have been bodily injured by a negligent motorist whose own automobile liability insurance coverage is insufficient to fully pay for the injured person's actual damages." Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri, 992 S.W.2d 308, 313 (Mo. App. E.D. 1999). "Most often, UIM coverage takes the form of policy provisions which establish a specified total amount of monetary protection and guarantee the insured of receiving coverage for that contracted amount in the event of an accident, to the extent that the tortfeasor motorist's own liability coverage is less than the contracted amount." Id. It has been said that "'UIM coverage is floating, personal accident insurance that follows the insured individual wherever he goes rather than insurance on a particular vehicle.'" Long, 351 S.W.3d at 696, quoting Niswonger, 992 S.W.2d at 313.

In Veach v. Farmers Ins. Co., 460 N.W.2d 845, 847 (Iowa 1990), the Iowa Supreme Court analyzed an exclusion similar to those in this case, that being a UIM

10

exclusion that made coverage dependent on the vehicle and which did not follow the insured. The Veach court observed that an insured often does not have any control over the insurance coverage of the vehicle in which he is riding, meaning "the insured's underinsured motorist coverage may change each time the insured enters a different vehicle." Id. Relying on state statutes and public policy, the court found the exclusion invalid because it frustrated the purpose of underinsured motorist coverage and was contrary to "'common sense and the consuming public's general understanding of [underinsured motorist] coverage[.]'" Id. at 847-48, quoting Poehls v. Guaranty Nat'l Ins. Co., 436 N.W.2d 62, 64 (Iowa 1989). The Veach court further recognized that under such exclusions, "the insured are often better covered in a vehicle with no underinsured motorist coverage than in one with the statutory minimum." Id. at 848.

This Court acknowledges that the exclusions in the Policy make coverage dependent on the vehicle and does not follow the insured, rendering the exclusions contrary to the very nature of UIM coverage. Unfortunately, Missouri does not require UIM coverage either by statute or public policy. Long, 351 S.W.3d at 696. "Therefore, the contract between the insured and the insurer defines and limits coverage." Id.

Due to the lack of public policy to the contrary, exclusions to UIM coverage are enforceable in Missouri absent an ambiguity in the contract language. Niswonger, 992 S.W.2d at 313. Only when there is an ambiguity will a contested provision be resolved consistent with the insured's objective and reasonable expectations as to what coverage would be provided. State Farm Mut. Auto. Ins. Co. v. Esswein, 43 S.W.3d 833, 844 (Mo. App. E.D. 2000).

11

Here, neither the Other Insurance Clause nor the contract as a whole are ambiguous; thus, the Non-Owned Vehicle Exclusion and the Other Insurance Clause are enforceable and preclude coverage under the facts of this case. As a result, the perverse outcome predicted by the Iowa Supreme Court in Veach has manifested itself, in that Naeger would have had better insurance coverage if Gessford's vehicle did not have any underinsured motorist coverage at all. While the exclusions in the Policy are contrary to common sense and the consuming public's general understanding of underinsured motorist coverage, the exclusions are enforceable under the current state of Missouri law.

The circuit court did not err in granting summary judgment in favor of Farmers because there are no genuine issues of material fact and Farmers is entitled to judgment as a matter of law.

## Conclusion

The circuit court's judgment granting Farmers' Motion for Summary Judgment and dismissing Naeger's claims against Farmers with prejudice is affirmed.

*Sherri B. Sullivan*

Sherri B. Sullivan, J.

Robert G. Dowd, Jr., J., concurs.
Lawrence E. Mooney, P.J., dissents in separate opinion.

12



# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| VALERIE NAEGER, | ) | No. ED100012 |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Robert H. Dierker |
| FARMERS INSURANCE COMPANY, INC., | ) | |
| | ) | |
| Defendant/Respondent. | ) | Filed: May 6, 2014 |

## DISSENT

I respectfully dissent.

Courts should protect the reasonable expectations of parties to an insurance contract. As well-stated by our Supreme Court, "In construing the terms of an insurance policy, this Court applies 'the meaning which would be attached by an ordinary person of average understanding if purchasing insurance,' and resolves ambiguities in favor of the insured." *Seeck v. Geico General Ins.*, 212 S.W.3d 129, 132 (Mo. banc 2007)(quoting *McCormack Baron Mgt. Servs., Inc. v. American Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999))(internal citations omitted). And exclusionary clauses, such as we have here, are to be strictly construed against the drafter, who also bears the burden of showing the exclusion applies. *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. banc 2013).

Here, the insured especially contracted with her own insurer for the addition of what it called "underinsured motorist coverage," despite its additional cost. The insured likely believed

such coverage would provide floating, personal accident coverage. Indeed, prior to the trial court's ruling in this case, that was the uniform understanding of Missouri's courts. *See Long v. Shelter Ins. Companies*, 351 S.W.3d 692, 696 (Mo. App. W.D. 2011)(quoting *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 313 (Mo. App. E.D. 1999)) ("UIM [underinsured motorist] coverage is floating, personal accident insurance that follows the insured individual wherever he goes rather than insurance on a particular vehicle.")

But the insurance company now seeks to shirk its promise of such coverage by virtue of a novel exclusion. The exclusion bars coverage if the insured was occupying a vehicle that is otherwise insured "for this coverage," whatever that means. The trial court has somehow concluded that phrase means "comparable" underinsured motorist coverage, whatever that means. Is the insured excluded from collecting from her own insurer if another insurer has insurance with different limits or different terms?

And it is such other "coverage," not an actual recovery pursuant to such coverage, that bars you from recovering from your own insurer. If the vehicle you are in has such coverage from a difficult or insolvent insurer, your bargained-for underinsured motorist coverage from your own insurer provides no safety net. To the contrary, the exclusion scuttles the floating, personal insurance you especially purchased. Such an insured is indeed underinsured, both before and after the purchase of such a misbegotten policy.

Because the insurer here promised "underinsured motorist coverage" and the insured paid for such coverage, I would hold the insurer must provide floating, personal accident coverage. If the insurer wants to alter the nature of the insurance it provides, it should likewise change the name of its product so that no one will be misled. Here, the insurer might have adopted a more

2

apt appellation, such as "under-underinsured motorist coverage," for what the insurer seeks to provide is distinctly less than underinsured motorist coverage.

_Lawrence E. Mooney_
LAWRENCE E. MOONEY, PRESIDING JUDGE

3